# UNITED STATES EX REL. NALLE v. HOOVER.

BOARD OF EDUCATION; PUBLIC SCHOOLS; EVIDENCE; MANDAMUS.

1. Where the relator in a mandamus proceeding against the board of education to compel her reinstatement as a teacher in the public schools, from which position she was dismissed by the board, sought to establish the fact that charges upon which she had been given no hearing had been made against her, by the offer of certain letters written by the superintendent of public schools, who is not a member of the board, after her dismissal, expressing his opinion of her qualifications, it was *held* that the letters were properly excluded by the trial court.

2. The board of education of this District has the power to inquire into the qualifications of a teacher of the public schools and to dismiss her without giving her the hearing required by sec. 10 of the act of Congress of June 20, 1906 (34 Stat. at L. 321, chap. 3446), which provides that, "when a teacher is on trial, or being investigated, he or she shall have the right to be atended by counsel, and by at ileast one friend of his or her selection;" that section being an independent provision for the protection of teachers against all charges that are not confined to the professional qualifications of a teacher.

3. The court will liberally construe the act of Congress of June 20, 1906
   (34 Stat. at L. 316, chap. 3446), creating the board of education of
   the District of Columbia, so as to give the board discretion in carry-
   ing out its objects, and not interfere by mandamus with the board in
   the exercise of its discretion in matters pertaining to the management
   of the public schools, unless there has been such a gross abuse of dis-
   cretion as amounts to a total lack of authority to act.

4. The writ of mandamus will not lie to correct mere errors of judgment,
   or to correct errors where jurisdiction exists.

No. 1857.   Submitted April 7, 1908.   Decided May 5, 1908.

HEARING on an appeal by the relator from an order of the
Supreme Court of the District of Columbia dismissing her
petition for mandamus.                              *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellant, Mary E. Nalle, relator below, filed her petition
in the supreme court of the District of Columbia praying that
a writ of mandamus issue to the respondents, William D.
Hoover, Richard R. Horner, John F. Cook, William V. Cox,
Barton W. Evermann, Justina R. Hill, Ellen Spencer Mussey,
James F. Oyster, and Mary C. Terrell, requiring them to re-
instate her to the position of a teacher in the public schools of
the District.   It appears that relator had, for many years
prior to September, 1906, been a teacher in the public schools
of the District of Columbia.   The respondents constitute the
board of education of the District, duly appointed as such under
the provisions of an act of Congress approved June 20, 1906.
At a meeting of the said board, held in September, 1906, re-
spondents had under consideration the general qualifications
of the teachers of the District.   Upon the written recommenda-
tion of the superintendent of schools, the relator, at a meet-
ing of the board held on September 14, 1906, was dismissed
from the service as a teacher.

Relator, in her petition, alleged, in substance, that she had
been a teacher in the public schools of the District of Columbia
since 1873; that she had been informed by the superintendent

of schools, on September 13, 1906, that he had nominated her to the board for a position on the teaching force of the District, but that he was informed that the board would not indorse his recommendation. She alleged that, two days later, she was informed by the secretary of the board that "she had been dismissed from the public schools of the District of Columbia for the good of the service." She further alleged that she requested the board to present her with a copy of the charges against her, and that she be given a hearing and an opportunity to refute the same; that, in answer thereto, she was notified that her request had been laid on the table. Relator then averred that the action of the board of education in dismissing her was null and void, and that the same was done contrary to the recommendation of the superintendent of schools, as provided for by sec. 2 of the act of Congress of June 20, 1906, and in direct violation of, and contrary to, the letter and spirit of sec. 10 of said act, and that, notwithstanding the action of said board, she is of right, and in law, a teacher in the public schools of the District of Columbia, and, as such, entitled to all the rights, dignities, privileges, and emoluments of that position.

In answer to the petition, respondents alleged, in substance, that, at the time they assumed their duties as a board of education, they found a large number of teachers, including the relator, who had been employed by the previous board of education; that respondents, acting as a board, began to provide the schools with teachers for the fiscal year ending June 30, 1907; that, in so doing, they continued in the service those of the teachers then employed who were competent and qualified to teach, but that, upon examination, the relator was found not sufficiently qualified in all respects to be competent to continue in the service, "but was deficient in the necessary academic and pedagogic equipment of a competent teacher;" that, at a meeting of the board on September 14, 1906, when the said board was dealing with the appointment and continuance of the teachers, upon the recommendation of the superintendent, the relator was dismissed by the vote of the board; that no charge or accusation of any kind was filed with the respondents

against the relator, and, accordingly, said relator was not dismissed because of any charge or any accusation against her; that the relator was never charged with an offense, or accused, so as to be put upon trial, or to be under investigation, within the meaning of sec. 10 of the act of June 20, 1906.

To this answer, the relator demurred. Upon hearing, the demurrer was overruled, and leave granted by the court to file a traverse to respondents' answer. The traverse raised two issues of fact, as set forth in the brief of relator: "First, that the relator was dismissed solely because she was deficient in the necessary academic and pedagogic equipment of a competent teacher; and, second, that there was not filed with the board any charge or accusation against relator, and she was not dismissed because of any accusation or charge filed against her." Upon motion of respondents, the court struck out all of the several grounds of traverse that raised an issue as to whether any charges were filed against relator, and narrowed the submission of proof to the one question,—whether she was dismissed solely because, upon examination, she was found to be deficient in the necessary academic and pedagogic equipment of a competent teacher.

Upon this issue, relator offered as a witness a member of the board of education, who testified that no examination was ever made by the board as to the qualifications of relator. Relator then exhibited and offered in evidence several letters from Dr. Chancellor, superintendent of schools, which, it was insisted, tended to show that there was no question as to relator's fitness for her position, in the sense of being in every way qualified, both mentally and physically, and that such questions were never discussed by the board in considering her case, and that her dismissal was not recommended by him upon that ground. Upon objection of respondents' counsel, the court refused to consider said letters. Relator then called Dr. Chancellor as a witness, who testified that "he attended all meetings of the board of education in September, 1906, was present at the meeting held by the board of education September 14, 1906, when Miss Nalle was dismissed; recalled no discussion

at that meeting of Miss Nalle's qualifications, academic or pedagogic. He further testified that at a meeting a few days before the 14th, at which he remembers all of the members were present, her fitness for the public schools was discussed,—that they did not discuss this feature, or that and the other, but they did discuss generally relator's fitness for continuation in the service, and that he knows that it was the concensus of opinion, or, in other words, he understood that it was the opinion of the board, or of substantially the entire board, that she ought to be dismissed from the service because she was not qualified to continue as a teacher; and witness wholly understood that members of the board at that conference were talking as members of the board; whereupon he made his written recommendation that she be dismissed for the good of the service, and the board acted upon that." Upon this evidence, relator rested her case. Counsel for respondents moved for judgment on the ground that the evidence showed that relator had been dismissed by authority of law, which motion was sustained and judgment entered by the court. From this judgment, relator prosecuted this appeal.

*Mr. John C. Gittings* and *Mr. J. M. Chamberlin* for the appellant.

*Mr. Stuart McNamara* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The case comes here upon the following assignments of error:

"The court below erred:

"1st. In overruling the petitioner's demurrer to the answer.

"2d. In sustaining the respondents' motion to strike out the 1st, 2d, 3d, 6th, and 9th grounds assigned by the traverse of the relator to the answer.

"3d. In refusing to admit in evidence and consider the Chancellor letters.

"4th. In sustaining the respondents' motion denying writ and dismissing petition."

The provisions of the Act of Congress, material for the purposes of this inquiry, are as follows:

"Sec. 2.    That the control of the public schools of the District of Columbia is hereby vested in a board of education to consist of nine members.

"No appointment, promotion, transfer, or dismissal of any director, supervising principal, principal, head of department, teacher, or any other subordinate to the superintendent of schools, shall be made by the board of education, except upon the written recommendation of the superintendent of schools.

"Sec. 3.    That the board shall appoint one superintendent for all the public schools in the District of Columbia, who shall hold said office for a term of three years, and who shall have the direction of and supervision in all matters pertaining to the instruction in all the schools under the board of education. He shall have a seat in the board and a right to speak on all matters before the board, but not the right to vote."

"Sec. 6.    No teacher or officer in the service of the public schools of the District of Columbia at the time of the passage of this act shall, by the operation of this act, be required to take any examination, either mental or physical, to be continued in the service. The board of examiners * * * shall consist of the superintendent and two heads of departments of the white schools for the white teachers, and of the superintendent and two heads of departments of the colored schools for colored teachers. The designation of such heads of departments for membership on these boards to be made by the board of education annually."

"Sec. 10.    When a teacher is on trial, or being investigated, he or she shall have the right to be attended by counsel, and by at least one friend of his or her selection."·

We think that the main question involved in this appeal can be disposed of without a separate consideration of each

assignment of error.   It is insisted by counsel for relator that the board of education has no inherent power to either appoint or dismiss a teacher, except upon the written recommendation of the superintendent.   We need not stop to consider that question, since the record discloses that the relator was dismissed by the board upon the written recommendation of the superintendent.   In that particular, the letter of the statute was strictly followed.   It is also contended by counsel for relator that the board exceeded its authority in dismissing the relator without a formal charge being filed and a hearing had at which relator could be present and represented by counsel.

It clearly appears from the record that there were no such charges filed with the board as would authorize a hearing under sec. 10 of the act.   It was sought to establish the existence of charges by the introduction of certain letters written by the superintendent after the dismissal of relator.   The letters were properly excluded by the trial court.   They were not letters of the board, and could have no binding effect upon it.   It is immaterial if the superintendent, as indicated by one of his letters, had recommended the retention of the relator on the teaching force.   There was nothing to prevent him from changing his mind and recommending her dismissal, as was done.   There is nothing in the statute that makes the recommendation of the superintendent binding upon the board. The board may refuse to indorse his recommendation.   It is not required to elect or dismiss a teacher because he has so recommended.   The recommendation is only a basis for action by the board.   It is not controlling upon it.   Hence, any letters the superintendent may have written to outsiders, expressing his opinion as to relator's qualifications or what governed the board in its action, could have no legal bearing on the issue here involved.

The answer of respondents sets forth that relator was dismissed because she was lacking in the academic and pedagogic equipment of a competent teacher, and that no charges of any kind were filed against her.   This is specifically denied by the traverse of relator.   The evidence of the witness Chancellor,

however, clearly discloses that relator was dismissed from the service upon the recommendation of the superintendent, after an inquiry made by the board as to her professional qualifications to teach in the public schools of the District. The whole question before us is, whether or not the board had power to make such an inquiry and dismiss relator without according her a hearing as provided in sec. 10 of the act. There is every reason why a teacher should not be appointed or dismissed except upon the recommendation of the superintendent. The superintendent is *ex officio* a member of the board. He was undoubtedly placed in this position in order that he might be present at the meetings of the board and advise it of the condition of the schools, the qualifications of the teachers, and make recommendations from time to time looking to the improvement of the schools. The statute does not contemplate that the board shall convert itself into a court to try the questions involved in these recommendations before passing upon the same. The statute, in broad terms, places the general control of the schools within the board. To hold that, before a teacher could be dismissed from the service for lack of professional qualifications, specific charges must be filed and trial had, counsel present, and witnesses examined, would convert the board into a quasi judicial body, and, to a large extent, limit it in the exercise of its administrative discretion. We cannot conceive of Congress intending to inaugurate such a system.

As to new teachers, the recommendation of the superintendent is a condition precedent to their election by the board. The knowledge gained by the superintendent in supervising the examination of a new teacher is deemed indispensable to the proper guidance of the board. But the mere ability of an applicant to pass the examination, while sufficient to procure a position in the schools, is only one step in determining the professional qualifications of a teacher. The superintendent, after such employment, has especial opportunity to study the work of the teacher in the class room, and form an opinion as to his or her general qualifications. Congress, in its wisdom, recog-

nizing the superior opportunity thus afforded the superintend-ent, provided that, before a teacher should be dismissed from the service, the board should have the recommendation of the superintendent to that effect. This applied to teachers in the service at the date of the passage of the act as well as to those subsequently employed.

It was not intended by this act, in providing a specific method of examination of teachers prior to their employment, to prohibit the board from inquiring into the qualifications of one already in the service, and dismissing such teacher in its discretion, if found, in the judgment of the board, to be inefficient. There is no connection or conflict between the inquiry the board may make in such a case and the examination required to be imposed upon applicants for positions in the schools. Neither do we think there is any connection or conflict between the inquiry the board may make as to the qualifications of a teacher in the service, with a view to his or her dismissal, and sec. 10 of the act. Section 10 is an independent provision for the protection of teachers against charges that are not confined to the professional qualifications of the teacher. Charges under this section need not arise upon the recommendation of the superintendent, but may come from outside sources. It embraces matters not peculiarly within the knowledge of the superintendent or board, issues of fact that are the subject of proof, and not the mere expression of opinion, charges upon which the taking of evidence is necessary for the enlightenment of the board, in order that it may intelligently exercise its discretion. This investigation is not primarily instituted for the purpose of leading to the dismissal of the teacher. Its purpose is to give the accused an opportunity to answer the charges preferred. It is as much for the information and guidance of the superintendent and the board as for the general public who have an especial interest in the welfare of the schools. The disclosures made at the trial may form the basis for the subsequent discharge of the teacher; but that is not the purpose of the inquiry. On the other hand, the professional qualifications of a teacher are peculiarly within the knowledge

of the superintendent; they are not so much the subject of proof as a matter of opinion. It is proper that, before the board acts, the judgment of the superintendent should be consulted. He is charged with the duty of passing upon the qualifications of teachers, both before and after employment. If the dismissal of a teacher is, in every instance, to be made the subject of judicial inquiry, the discretion of the superintendent and the board in the appointment of a teacher may, with equal propriety, be subjected to a similar inquiry. In short, respondents would be shorn of all the discretionary power usually belonging to such officers, and which, we think, is clearly vested in them by the terms of this act.

We conceive it to be the duty of the court to construe this statute liberally, so as to give the board as broad discretion as possible in carrying out its objects. Public policy demands that, in the management and control of the public schools, final administrative authority shall be somewhere vested. Here, it is vested in the board of education of the District. It is not the duty or prerogative of the courts to interfere by writ of mandamus with the board in the exercise of its discretion in matters pertaining to the control and management of the public schools of the District, unless there is such a gross abuse of discretion as amounts to a total lack of authority to act.

The extraordinary writ of mandamus will not be granted to correct mere errors of judgment committed by the board, so long as it acts within the authority conferred by statute. If the board had power to dismiss relator upon the recommendation of the superintendent of schools, without granting her such a hearing as is provided for in sec. 10 of the act, we will not stop to inquire into the method employed by the board in arriving at its decision. If the power exists, the writ cannot issue; if the board had jurisdiction to act, the writ must be denied. The writ will not issue to correct errors where jurisdiction exists.

We are of the opinion that the board of education, in dismissing relator from the schools, acted within the authority vested in it by the act of Congress. The judgment is affirmed with costs, and it is so ordered.                    *Affirmed.*