## LEVINE v. FARLEY, Postmaster General, et al.

### No. 7308.

United States Court of Appeals for the District of Columbia.

Argued June 6, 1939.

Decided Aug. 7, 1939.

Writ of Certiorari Denied Jan. 2, 1940.

See 60 S.Ct. 377, 84 L.Ed. ——.

Frederick A. Ballard, of Washington, D. C., and Samuel Paul Puner, of New York City, for appellant.

David A. Pine, U. S. Atty., and Howard Boyd, Asst. U. S. Atty., both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

## GRONER, C. J.

This is an appeal from a final order dismissing appellant's petition for a writ of mandamus. The action was begun prior to the effective date of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, but we assume that, while the writ of mandamus is abolished by Rule 81 (b), similar relief is still available and the substantive rights of the parties are governed by principles which have formerly been applied in mandamus cases. [1]

Petitioner was employed in the New York Post Office as a regular clerk under classification by the Civil Service Commission. In 1936 his efficiency rating was 98 per cent, but on March 1, 1937, he was dismissed from the service. The circumstances, briefly stated, are as follows: Petitioner was a member of an organization known as National Federation of Post Office Clerks, affiliated with the American Federation of Labor. In April, 1936, the local of which he was a member adopted a resolution reciting that a number of postal clerks active in their trade unions had been summarily transferred and that these discriminations had finally culminated in the dismissal of Clerk Edelsberg. The resolution declared that the action of the postal authorities would result in lowering the morale and hampering the efficiency of the service, and constituted a violation of the civil service laws; that the local go on record as being opposed to all forms of discrimination; that a committee of seven be appointed to enlist the assistance of all affiliated trade unions and other organizations, looking to the reinstatement of Edelsberg; and that a copy of the resolution be sent to the Civil Service Commission, the Executive Committee of the American Federation of Labor, the New York Central Trades and Labor Council, the New York City Postmaster, the Postmaster General, and the National Officers of the Association of Post Office Clerks, and be published in the following issue of the "Union Postal Clerk". It was also resolved that copies be sent to congressional committees and to New York Congressmen with the request that a hearing be given "the dismissed clerks" and that an investigation of the conditions leading to "their dismissal" be instituted. Petitioner was elected a member of the union's committee, and he participated in sending copies of the resolution to the various individuals and organizations enumerated and also in forwarding to and having published in certain newspapers a news release covering the facts charged in the resolution. These publications in the press constituted the offense for which petitioner was dismissed, but they are not included in the record, and we have no information as to their contents.

The copy of the resolution sent to the Postmaster General was acknowledged May 1, 1936, as follows:

"The receipt is acknowledged of your letter of April 25, 1936, addressed to the Postmaster General, enclosing copy of resolution adopted by Local No. 10 of the New York Federation of Post Office Clerks, regarding the separation of Clerk Herman Edelsberg.

"Mr. Edelsberg's case has been carefully reviewed but in view of the circumstances it is our opinion that no injustice was done in authorizing his removal and that action could not be taken looking to his reinstatement."

On the following 3d of July petitioner received from the New York Postmaster a notice charging him with misconduct as follows: "It is reported that you were charged with action unbecoming a Civil Service employee, for composing, aiding and abetting in the preparation of untruthful statements, thereby reflecting discredit upon the Service and causing the publication in newspapers of said ambiguous, untruthful and misleading statements, tending to bring the Service into disrepute." This notice was followed by another under date of July 13, which in turn charged

[1] Rule 81 (b): "The writs of scire facias and mandamus are abolished. Relief heretofore available by mandamus or scire facias may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules."

petitioner with "the preparation and publication of news items tending to bring the Post Office Department into disrepute, by having it falsely appear that clerks were discriminated against, and in some instances dismissed from the Service because of their union activities, when·as a matter of fact such employee or employees were dismissed for offenses against the Regulations of the Service". Items appeared in the Jewish Morning Journal of April 26, 1936, the Daily Worker of May 8, 1936, and the New York Evening Post of May 15, 1936.

Petitioner was given five days in which to show cause in writing why he should not be dismissed from the service or otherwise disciplined, and on July 18 he answered, reciting his election to the committee and his activities as a member, and stating that no member of the committee had opposed the issuance of the news release, which had been prepared and sent for publication only after careful discussion and deliberation. Apparently no action was thereafter taken until March 1, 1937, at which time petitioner received a notice from the Postmaster at New York that his services as clerk had terminated on that date, the ground of dismissal being that he had aided and abetted in the preparation and newspaper publication of untruthful statements reflecting discredit on the service.

Coincidently with the action dismissing petitioner, other members of the committee were punished as follows: Richard Lickdyke and Paul Wolfe were transferred from one station to another; William Harris was reduced $200 a year in salary, lost his status as a special clerk, and was placed on probation for one year; two other members of the committee were reduced in salary $100 each, were transferred to another station, and placed on one year probation.

The amended petition in the court below was filed December 9, 1937. The Postmaster General answered, and petitioner filed a replication, which the Postmaster General moved to dismiss on the grounds that the court had no power to review his official action in removing petitioner; that mandamus was not the proper remedy; and that petitioner's cause of action, if he had one, was barred by laches. The District Court without opinion sustained the motion, discharging the rule to show cause, and entered a. final decree dismissing the petition. This appeal was then taken, and petitioner bases his right to reversal on the ground that, since the order dismissing him from the service violated Sec. 43 of the Postal Laws and Regulations (5 U.S.C. § 652, 5 U.S.C.A. § 652) [2] and also Paragraph Two of Civil Service Rule 12, [3] mandamus is the proper remedy.

---

[2] "No person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal; and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same. Membership in any society, association, club, or other form of organization of postal employees not affiliated with any outside organization imposing an obligation or duty upon them to engage in any strike, or proposing to assist them in any strike, against the United States, having for its objects, among other things, improvements in the condition of labor of its members, including hours of labor and compensation therefor and leave of absence, by any person or groups of persons in said Postal Service, or the presenting by any such person or groups of persons or [of] any grievance or grievances to the Congress or any Member thereof shall not constitute or be cause for reduction in rank or compensation or removal of such person or groups of persons from said service. The right of persons employed in the civil service of the United States, either individually or collectively, to petition Congress, or any Member thereof, or to furnish information to either House of Congress, or to any committee or member thereof, shall not be denied or interfered with."

[3] In making removals or reductions, and in other punishment, like penalties shall be imposed for like offenses, and no discrimination shall be exercised for political or religious reasons.

190

■ The question in the case is not new. The printed volumes of our reports are full of cases where aggrieved government employees have sought mandamus either to compel reinstatement or to correct their official status. In most of them the writ has been denied, and in cases where it has been granted there were circumstances which are absent here. For instance, in Whitwell v. U. S. ex rel. Selden, 61 App. D.C. 169, 58 F.2d 895, and in Blair v. U. S. ex rel. Hellmann, 45 App.D.C. 353, we affirmed the granting of writs to compel reinstatement of teachers in the District of Columbia public schools, on the ground that, since the statute specifically provided that no teacher should be dismissed except upon recommendation of the superintendent of schools, the dismissals in each case, without this recommendation, were unlawful. In Kalbfus v. Siddons, 42 App.D.C. 310, we held the writ should issue in behalf of an assistant assessor of the District of Columbia who had been removed without a hearing, on the ground that the statute required a hearing. And in MacFarland v. U. S. ex rel. Russell, 31 App.D.C. 321, we affirmed the issuance of a writ to require the Commissioners of the District of Columbia to reclassify a policeman, and in Farley v. U. S. ex rel. Welch, 67 App.D.C. 382, 92 F.2d 533, 538, we did the same for the reclassification of a postal clerk. But in the last mentioned cases, and indeed in all the cases in which we have sustained the right to the writ, we have looked into the statutes and only upon a finding that the rights asserted were clearly granted have we held that mandamus should issue. In Farley v. U. S. ex rel. Welch, supra, we said, "It is not the writ which commands petitioner's promotion to grade 5, but the Act of Congress, which neither the Postmaster General nor this Court is at liberty to ignore". But, lacking a clear statutory limitation, we have in all cases of this nature recognized the general rule that the power of appointment to public office carries with it the right of removal. U. S. ex rel. Taylor v. Taft, 24 App.D.C. 95; Longfellow v. Gudger, 57 App.D.C. 50, 16 F.2d 653; Crow v. U. S. ex rel. Mitchell, 67 App.D.C. 61, 89 F.2d 805, and Caswell v. Morgenthau, 69 App.D.C. 15, 98 F.2d 296. And the reason for the rule is that "interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief". Decatur v. Paulding, 14 Pet. 497, 515, 10 L.Ed. 559, 609; Keim v. United States, 177 U.S. 290, 293, 20 S.Ct. 574, 44 L.Ed. 774. Unless, therefore, an examination of the record shows (a) that the action of the Postmaster General in removing petitioner from office was clearly a violation of some provision of law or (b) that the Postmaster General failed to observe and carry out the procedure for removal as provided by law, we must affirm the action of the lower court.

The statute, which we have printed in the margin, provides that no person in the classified civil service shall be removed therefrom except for such cause as will promote the efficiency of the service. It expressly provides that neither membership in an organization of postal employees having for its object improvement in the condition of labor, nor the presenting of grievances to Congress, shall be cause for removal. Petitioner insists that the statute was violated because, as he claims, he acted as a member of the association of clerks in presenting to the proper authorities of government the wrongful action of the Postmaster at New York in the removal of a former clerk, a member of the association. But we think this is not so clearly shown as to justify judicial intervention.

■ The matter contained in the resolution, if those who participated in its preparation believed it to be true, was undoubtedly a proper subject to bring to the attention of the postal authorities and of the Congress. But the charge against petitioner and the ground stated for removal made no mention of the preparation of the resolution or of the fact that copies were sent to the postal authorities or the members of Congress. The offense was the publication of false statements in the newspapers, and on this charge petitioner was tried precisely according to the terms of the statute. He had written notice of the charge and a reasonable time to "answer the same in writing." His defense was that no member of the committee opposed the plan of publicizing its grievances in the newspapers and that the final drafts were made only after careful discussion and deliberation. The statute makes no reference to actively promoted publicity or to any publication of grievances other than communications to public officials. Obviously, therefore, if the charges against the postal officials were false, publication in the newspaper for the purpose of intimidation or of bringng pressure to bear on officials whose duty it was to preserve the efficiency of the service,

was conduct tending to disrupt the service; and in this view the only question for decision is whether a court may go behind the official findings of the postal authorities and try the questions of fact all over again. We think the rule is that this cannot be done.

 The same question arose in U. S. ex rel. Anderson v. Simon, 50 App.D.C. 199, 269 F. 715, and there referring to the previous case of U. S. ex rel. Nalle v. Hoover, 31 App.D.C. 311, we said that the writ will never be granted to correct errors of judgment committed by a trial board so long as it is shown that it acted within the authority conferred by the statute. Subsequently a similar question arose on an appeal from the Court of Claims to the Supreme Court in the case of Eberlein v. United States, 257 U.S. 82, 42 S.Ct. 12, 66 L.Ed. 140. A clerk in the customs service had been removed after due hearing upon charges, but later, as the result of a new investigation made by the department, had been reinstated on findings that the original charges were not proved. He unsuccessfully brought suit to recover his back salary, the Supreme Court saying that, since he had had the benefit of a hearing according to the regulations then in force, the original action of the officials causing his removal from the service was not subject to re-examination or revision in a court of law. And the same conclusion was reached in Keim v. United States, 177 U.S. 290, 295, 20 S.Ct. 574, 44 L.Ed. 774. It is clear from all of these authorities that, unless there be some specific statutory provision to the contrary, the action of an appointing officer in removing an employee upon written charges and after opportunity to answer, is beyond review in the courts in suits for mandamus. In short, the courts are powerless to review the merits of a valid charge.

This brings us, then, to petitioner's other ground for relief, namely, that his dismissal violated Civil Service Rule 12, which requires that, in making removals, like penalties shall be imposed for like offenses.

Petitioner says as to this that he was discriminated against because he alone was subjected to dismissal while the other members of the committee were subjected to lesser punishment. In considering the question, we are met by the same impediment we have found to exist in relation to the statute we have mentioned. Petitioner nowhere denies that he caused the publication of the newspaper articles. All he says is that other members of the committee were equally concerned in the preparation of the articles. But, even if all participated, the degrees of offending might very well have been different, and that question was submitted to the postal authorities upon the respective proceedings against all who participated. To weigh the question of guilt as between them would involve a retrial of the facts and, as we have already said, that is not our right, but a matter solely within the province of the postal authorities. Until Congress makes some provision to the contrary, the facts must be settled by administrative officers of government, and the trial court is not permitted to substitute its judgment for theirs, for to do so would be interfering with the discretion imposed by statute, and this is the sustained ruling on that subject.

We, therefore, hold that, where action is taken in removing from office an employee in the classified service and the action is in accordance with the requirements of the statute relating thereto, such action is not reviewable by mandamus, and a court of law has no jurisdiction to inquire into the guilt or innocence of the employee as to the charges upon which he was removed. Golding v. United States, 78 Ct. Cl. 682; Arthur S. Kellom v. United States, 55 Ct.Cl. 174.

Affirmed.