MaddeN, Judge,
delivered the opinion of the court:
This suit arises out of a contract made by the plaintiff with the United States on February 22, 1943, for the construction of certain designated portions of the Alaska-Canada Highway. The Public Roads Administration, Federal Works Agency, was the Government’s contracting agency. The contract specified a fixed fee of $80,000 for the plaintiff, in addition to reimbursement for his costs. The contract provided that if the contract was terminated before completion, for the convenience of the Government, the contractor should be paid a proportionate part of the prescribed fee. The contract was so terminated and the plaintiff’s contract work was completed in October, 1943, and accepted by the Government on November 24, 1943. On December 11,1951, the plaintiff filed his petition in this court, and on January 2, 1953, filed his amended petition. The Government says that the statute of limitations had run against the plaintiff’s claims before the original petition was filed.
The plaintiff’s first claim is for the alleged unpaid balance of his fixed fee. If, under the terms of the contract, he was entitled to a larger amount than he has been paid, he became entitled to it at the time of his completion of the contract, and the acceptance of the work by the Government. The statute thus began to run on this claim on November 24,1943, and his petition was filed too late.
The plaintiff’s second claim is for damage to his trucks, tractors, and other equipment while they were being trans *382 ported back to him in Massachusetts after the highway work had been completed. The petition contains no direct statement as to when this damage occurred. It does claim interest on the amount of the alleged damage from December 31, 1944. It may be fairly assumed that the transportation was completed and the damage done before that date. The petition was, therefore, filed too late, as to this claim. The same observations apply to the plaintiff’s third claim, which is for tires, tubes, rims and wheels which were missing when the plaintiff’s equipment was returned to him in Massachusetts.
We defer the plaintiff’s fourth claim for special consideration.
The fifth claim is for equipment rental, the plaintiff asserting that he was, under the contract, entitled to be paid a minimum of one year’s rental on his equipment, even though it was used for less than that period. The one year period would have expired some time in 1944, and the plaintiff in his petition claims interest on the asserted rental from December 31,1944. This claim was, therefore, barred before the petition was filed.
The sixth claim is for payroll and costs of administration.
'While the project was active, the office work was done for the plaintiff by the so-called management contractor, without expense to the plaintiff. But when the work was terminated, the plaintiff’s home office in Massachusetts was obliged to prepare papers for the presentation of the plaintiff’s claims to the Government. This work was done from December 1, 1943, to August 5, 1944. The plaintiff claims interest on the principal amount from December 31, 1944. The petition, filed December 11, 1951, was too late.
We now consider the plaintiff’s fourth claim. This is for rental for its equipment “from May 15, 1944 to the date of final inspection of such equipment and its release to the plaintiff”. The plaintiff says that the contract obligated the Government to:
return such equipment to the plaintiff at the end of the contract period in good operating condition, less normal wear and tear, and to reimburse the plaintiff for necessary repair costs and for rental during the repair period.
*383 He says that due to Ms inability to obtain repair parts because of war conditions, the period during which such equipment was unusable “extended beyond December 31, 1944, on a great number of pieces of such equipment”. The un-repaired condition of the equipment would have had to extend for almost a year beyond the named date, to keep his claim for this rental from being barred by the statute. If the repairs were completed before December 11, 1945, the period of the asserted rental claim would have been fixed, and the rental claim would have matured more than six years before the filing of the petition. We think we should not read into the petition what the plaintiff, apparently quite candidly, has left out.
But the plaintiff says that on June 15, 1944, the Government paid the plaintiff $112,888.37 to cover the cost of repairs to the plaintiff’s vehicles for which the Government acknowledged liability, and that in the receipt which the plaintiff gave on that occasion was written:
It is agreed that the execution of the above release does not release the government from the claim of David Nassif Company for equipment rental during the repair period. Said repair period is to be hereafter determined between the parties.
The Government questions the authenticity of the language quoted above, and by an affidavit denies that the plaintiff at any time delivered a receipt containing such language to the Government. In the affidavit of another person, an attorney in the General Accounting Office, it asserts that on August 11, 1952, the plaintiff’s then attorney delivered such a document to the Comptroller General, as an exhibit in support of the plaintiff’s claim then pending in that office. It is to be noted that the copy of the release, plaintiff’s exhibit No. 2, shows the language quoted above as being written at the bottom of the release, after the witnessed signature of the plaintiff, and as not signed or initialed by anyone for the Government, although it purports to be an agreement by the Government.
Since the plaintiff was the party that would receive rental money if an agreement was reached, the plaintiff was the party to press for the fulfillment of the agreement to nego *384 tiate. The agreement to negotiate was in the nature of an obligation performable upon the plaintiff’s demand. If so treated, the period of limitations upon a suit for its alleged breach would begin to run from the time the agreement was made. But even if treated as an agreement to negotiate within a reasonable time, the period from June 15,1944, the date of the alleged agreement, to December 11, 1945, the latest date on which the agreement might have been breached, to make timely the filing of the petition on December 11,1951, was much more than a reasonable time for the fulfillment of the obligation to negotiate. Therefore, the alleged agreement, if made, could have been sued upon more than six years before suit was filed.
The plaintiff urges as to all of his claims that his causes of action on them did not accrue until the “Notice of Dis-allowance” of December 14, 1945, was given him, advising him. that administrative consideration of his claims was at an end. But it is settled doctrine that, once the right of action has accrued, the statute is not tolled by attempts to obtain a settlement through an administrative agency. Pink, Liquidator v. United States, 85 C. Cls. 121, 124; The L. E. Myers Co., Inc. v. United States, 105 C. Cls. 459, 478, and cases there cited.
The plaintiff’s petition is dismissed.
It is so ordered.
Howell, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.