Catherine **FATTORE, and Stephen J. Fattore, Jr., as Co-Executors of the Estate of Stephen J. Fattore, Deceased, and Eugene J. Fattore, d/b/a Fattore Company**

v.

**The UNITED STATES.**

No. 96–61.

United States Court of Claims.

Feb. 6, 1963.

Merle R. Jenkins, Detroit, Mich., for plaintiffs. Mansfield, DeWitt, Sulzbach & Jenkins, Detroit, Mich., was on the brief.

Kenneth H. Masters, Washington, D. C., with whom was Asst. Atty. Gen. Ramsey Clark.

JONES, Chief Judge.

Plaintiffs sue to recover the expenses and damages incurred as a result of moving themselves and their possessions from land acquired from them by the United States. Their claim is brought pursuant to the provisions of section 401 (b) of the Act of July 14, 1952, 66 Stat. 624, hereinafter quoted, which allows the Secretary of any military department acquiring land for any public works project, in his discretion, to reimburse the owners and tenants thereof for the fair amount of the moving expenses incurred in connection with vacating such land.

The Fattore Company, a partnership consisting of Stephen J. Fattore and Eugene J. Fattore, conveyed certain improved property located in Macomb County, Michigan, to the United States by a deed dated November 28, 1952, for a consideration of $49,800.

On April 20, 1953, having completed its move from the acquired land, the Fattore Company submitted an itemized application to defendant for reimbursement of its expenses, losses and damages in accordance with section 401(b), in the total sum of $34,983.73.[1] This applica-

---

1. The fair market value of the land, not here in dispute, was $50,000. Thus the amount claimed was clearly in excess of the 25 per centum allowed by section 401

tion was approved by the defendant on January 19, 1955, but only to the extent of $6,857.23, the remainder of the claim being disallowed as unreasonable. Notification of the approval was forwarded to the Fattore Company by a letter originating from the Detroit District Corps of Engineers on February 14, 1955. The letter requested that the Fattore Company indicate their acquiescence in the reduced amount by signing and returning the attached Public Voucher, Standard Form 1034. In their reply of February 15, 1955, plaintiffs returned the voucher unsigned and notified defendant that the amount stated therein was insufficient and unacceptable. Plaintiffs also requested a conference to consider the claim, and that request was subsequently granted.

On March 15, 1955, the defendant tendered Treasurer's Check number 2,814,-607, payable to Fattore Company, in the amount of $6,857.23. Fattore Company was advised that this sum was in reimbursement for losses and damages incurred in moving the property of the partnership. Plaintiffs did not cash this check, but retained it in their possession, where it apparently still reposes, although they did offer to return it to defendant on March 15, 1961, when this suit was filed.

The sum claimed by plaintiffs to represent the fair and reasonable amount of their moving expenses was determined from their tabulation of the actual expenses incurred. It appears that these amounts were entered upon the books and records of the Fattore Company. There is no reason to doubt that plaintiffs actually did expend such sums, the

question being whether such amounts were reasonably attributable to moving, and thus payable by defendant. Defendant's tendered amount, on the other hand, was a representation of those costs which, it is estimated, would have been expended had plaintiffs conducted their move in a manner which the Corps of Engineers felt was justified in the circumstances.[2]

It is plaintiffs' position that the Corps of Engineers acted arbitrarily and capriciously in failing to compute the sum due on the basis of actual costs and in failing to confer with plaintiffs' representatives on this issue. The ultimate effect of such a position, if accepted, would lead this court to a review of the Secretary's discretion.

Defendant contends that this petition is barred by the running of the statute of limitations in that plaintiffs' cause of action accrued upon their rejection of the government voucher, and, that in any event, plaintiffs cannot recover because this court has no jurisdiction to substitute its own judgment for that of the Secretary of the Army whose discretion is exclusive under section 401(b). Defendant also argues that the retention of the check by plaintiffs for a period of 6 years constituted an accord and satisfaction. However, because of the view we take of this case, we need not reach that issue.

It is our opinion that defendant's motion to dismiss should be granted for the reasons hereinafter set forth.

The petitioners' position in regard to the statute of limitations is that the period did not commence to run until March 15, 1955, when they received the

(b). Accordingly, plaintiffs amended their petition on oral argument to reduce their claim to $12,450.

2. Some 27 exhibits were filed in the record in connection with defendant's motion for summary judgment. Exhibit G, entitled "Application for Resettlement Reimbursement," is plaintiffs' schedule of moving expenses together with an itemized list of all items moved. It represents plaintiffs' claim. Exhibits X, Y, Z,

and AA constitute the basis for defendant's findings. Exhibit X is the report of investigation filed by the Acting Chief, Real Estate Division, Corps of Engineers regarding the Fattore claim, while Exhibits Y, Z, and AA are estimates prepared by the Project Engineer, the Chief of the Estimating and Review Section, Engineering Division, and the Construction Management Engineer of the Detroit District, respectively. The costs are based on prevailing rates.

check. The defendant, on the other hand, maintains that the statute was set in motion on the date that the Fattore Company acknowledged receipt of the payment voucher and its accompanying notification. This occurred on February 15. The petition in this case was not filed until March 15, 1961, thus plaintiffs' cause of action is barred if defendant is correct. The requirement that a suit must be filed within 6 years after the cause of action first accrues is jurisdictional. Soriano v. United States, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

■ It is a well-established principle that a claim accrues within the meaning of the jurisdictional statutes when all of the events have occurred which fix the liability of the United States to a claimant, and which fix the right of such person to sue thereon. Ball v. United States, 137 F.Supp. 740, 133 Ct.Cl. 841 (1956); Sese v. United States, 113 F.Supp. 658, 125 Ct.Cl. 526 (1953); Reliance Motors, Inc. v. United States, 81 F.Supp. 228, 112 Ct.Cl. 324 (1948). The question before this court is whether the receipt of the voucher on February 15, as defendant contends, is the kind of event that would fix the liability of the United States to the petitioners. It is our opinion that it does.

The principle in the instant case is similar to that found in the case of Bulkely, for Use of Wright v. United States, 8 Ct.Cl. 517 (1872). In that case the plaintiff transported certain army supplies and received for his services a voucher which declared on its face that November 16, 1865, was to be the date upon which compensation would be due him. The Government had deducted certain amounts from the sum agreed upon, and the voucher reflected these deductions. The court held, in a subsequent suit to collect the deductions, that plaintiff's cause of action had accrued on the date indicated for payment on the face of the voucher, even though actual payment was not tendered until March 15, 1866. In the instant case, of course, there was no date of payment indicated on the voucher, but in such cases the voucher is payable when signed by the payee and returned. It is true that subsequent certification is required by a Government agent, but this is a function of accounting and is not a review of the merits of the claim. The date at which plaintiffs indicated their refusal to sign the voucher is the latest date which they may use to compute the period of the statute, because by that date the Corps of Engineers had made a final determination of the amount it considered due to plaintiffs and nothing remained to be done. Whether any earlier date might be used, we do not decide.

■■ Plaintiffs make a point of the fact that in their letter of February 15 they requested a meeting. If we understand the thrust of their argument, it is that there was no finality to the Government's act until the check was tendered because it was subject to negotiation until that time. We do not agree. There was no lack of finality beyond February 15. The defendant had computed the amount due, and this amount was rejected by plaintiffs. Issue was joined at that point, and it is no defense to rely on subsequent transactions. It is a settled rule in this court that where a right of action has accrued, the statute of limitations is not tolled by attempts to obtain subsequent relief through the administrative processes, including negotiation. Nassif v. United States, 125 Ct.Cl. 379 (1953); Pink, Liquidator v. United States, 85 Ct.Cl. 121 (1937), cert. denied, 303 U.S. 642, 58 S.Ct. 641, 82 L.Ed. 1102 (1938). It is our position that plaintiffs are barred by the statute of limitations, but even if we should be in error as to this point, we feel that the defendant is still entitled to prevail, as shall be shown.

Petitioners' suit is brought under section 401(b) of the Act of July 14, 1952, 66 Stat. 624. This statute reads, in pertinent part, as follows:

"The Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force are respectively authorized, to the extent administratively determined by each to be fair and reasonable, * * * to

reimburse the owners and tenants of land to be acquired for any public works project of the military department concerned for expenses and other losses and damages incurred by such owners and tenants, respectively, in the process and as a direct result of the moving of themselves and their families and possessions because of such acquisition of land, * * * : *Provided,* That the total of such reimbursement * * * shall in no event exceed 25 per centum of the fair value of such parcel of land as determined by the Secretary of the military department concerned."

This provision is not ambiguous. It tells us that the Secretary, or, by implication, his authorized delegate, may reimburse an owner or a tenant for his moving expenses to the extent that he determines that such reimbursement is *fair and reasonable.* Defendant urges upon us the position that this is a discretionary act of the Secretary, and that this court has no jurisdiction to substitute its own judgment. Indeed, the line of cases cited by defendant in its brief [3] seems to adequately support that very principle. Likewise, however, the cases cited by plaintiffs [4] apparently stand for the principle that executive agency discretion may be exercised only so long as it is not arbitrary or capricious, and that in the latter event, this court may provide such relief as may be appropriate.

Although at first glance the two positions seem irreconcilable, they are not in direct conflict. These cases are best resolved by grouping them into convenient categories, or classes. The first of these general classes is illustrated by the case of United States v. Babcock, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011 (1919). In that case, on appeal from this court, two army officers were suing to recover the value of personal property which they allege was lost incident to military service. The Act of March 3, 1885, 23 Stat. 350, authorized the payment of claims for personal property lost or destroyed while its owners were performing military service, but it provided that "any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered * * *." (23 Stat. 350 (1885).) The language of this statute makes it clear that the administrative power to adjudicate is *unlimited* by any special standard, and that it is *expressly exclusive* in the agency. The Supreme Court held that the Court of Claims thus had no jurisdiction to entertain the claims of these officers.

The second class of cases is illustrated by the case of Montgomery Ward & Co. for Use of Pettibone v. United States, 94 Ct.Cl. 309 (1941). The Act of March 3, 1905, 33 Stat. 1091, 39 U.S.C. § 300 (1958), as amended, 39 U.S.C. § 4055 (Supp. III, 1959–61) authorized the Postmaster General to return to a user any postage for which services were not rendered. The language of that Act is as follows:

"[W]henever it shall be shown to the satisfaction of the Postmaster-Gen-

---

3. United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940); Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936); Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256 (1924); Martin v. Mott, 12 Wheat. 19, 25 U.S. 19, 6 L.Ed. 537 (1827); Montgomery Ward & Co. for Use of Pettibone v. United States, 94 Ct.Cl. 309 (1941); John B. Kelly, Inc. v. United States, 87 Ct.Cl. 271 (1938); Gibney v. United States, 146 F.Supp. 135 (S.D.Cal.1956);

and Blanc v. United States, 140 F.Supp. 481 (E.D.N.Y.1956).

4. Dismuke v. United States, supra note 3; Garfield v. United States ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168 (1908); Schaller v. United States, Ct.Cl., 288 F.2d 700 (1961); Crocker v. United States, 127 F.Supp. 568, 130 Ct.Cl. 567 (1955); Carlin v. United States, 100 F.Supp. 451, 121 Ct. Cl. 643 (1951); and Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487 (1948).

eral that any postage is paid on any mail matter for which service is not rendered * * * he may, in his discretion, * * * refund the proper amount * * *." [33 Stat. 1091 (1905).]

This language, like that involved in the Babcock case, supra, contains no statutory limitations upon discretion, but, unlike the previous case, it is silent in regard to whether the discretion was intended to be *exclusive*. Nevertheless, this court held that "where a special remedy is provided by the statute creating the right, that special remedy is exclusive, and where the statutory benefit is allowed only in the discretion of the administrative officer, his decision is final and the courts will not review it." [Montgomery Ward, supra, 94 Ct.Cl. at 313.] On the other hand, in the case of Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561 (1936), the Supreme Court stated that where the Congress did not expressly reserve the exclusive right to exercise discretion to the administrative officer, the right to resort to the courts should only be partially curtailed. Thus it appears that, in this second class of cases, where the authorizing statute is silent as to whether the discretion is or is not exclusive, each case must turn on its individual facts.

A third class of cases involves facts similar to those in Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487 (1948). That suit was brought under the provisions of the Act of August 24, 1912, 37 Stat. 539, 555, 5 U.S.C. § 652 (1958) which provides: "That no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service * * *." The defendant filed a demurrer on the ground of a discretionary act, but this court dismissed the demurrer, holding that the evidence strongly supported the fact that plaintiff had not been removed to "promote the efficiency" of the service, and thus there had been a clear abuse of administrative discretion. Unlike the cases referred to in classes 1 and 2 above, the statute in the Gadsden case was *not unlimited* in its authority. The discretion of the administrator could only be exercised for the authorized purpose of promoting efficiency. When he exceeded his statutory authority, this court stepped in. In effect, the Congress said to the commission, you may use your discretion *if* you use it to promote the efficiency of the service.

From these three classes of cases, it can be seen that the Congress may deprive this court of jurisdiction to review a discretionary act when it does so expressly, and within the framework of its constitutionally delegated powers. It is equally clear, however, that when the grant of power is limited, the Congress meant the administrator to stay within the grant or be subject to review. In the case before us for decision, the Secretary of the Army could exercise his discretion to pay or not to pay moving expenses only so long as he remained within the statutory limit of "fair and reasonable." This case then falls squarely within class 3, and this court has power to review the act of the Secretary, but only if plaintiffs have made a showing that he has exceeded his authority bestowed upon him by the Congress.

The record clearly shows that the defendant's voucher was prepared on the basis of its own findings. Plaintiffs' claim that all their asserted actual expenses should have been allowed in the computation is not sufficient to give us jurisdiction. Such an attack does not amount to a showing that it was unfair or unreasonable for the defendant to find the sum due in the manner that was used.

It is assumed that defendant will permit the plaintiffs to cash the previously issued check in the sum of $6,857.23, or will issue another for the same amount in lieu thereof.

Accordingly, the defendant's motion to dismiss the amended petition is granted, and the amended petition is dismissed.

DAVIS, DURFEE and LARAMORE, Judges, concur.