**Dwight CROCKER**

v.

**The UNITED STATES.**

**No. 50254.**

United States Court of Claims.
Jan. 11, 1955.

Tyree C. Derrick, St. Louis, Mo., for plaintiff. Meredith Turner, Springfield, Mo., was on the briefs.

Thomas H. McGrail, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff sues for the pay he lost by reason of his alleged wrongful removal from his position in the classified civil service of the United States.

Plaintiff, a member of the classified civil service, was employed by the Medical Center for Federal Prisoners at Springfield, Missouri, as a Medical Custodial Assistant, grade CPC–7. His employment commenced on April 1, 1940, and was terminated on November 16, 1948. Plaintiff served continuously at the Medical Center during this time with the exception of three and one-half years which the plaintiff spent in the military service. Plaintiff was notified by a memorandum dated April 6, 1948, that his performance on the job had failed to meet the requirements of the service and he was warned that if his performance did not improve within a period of 90 days or less he would receive a "fair" or "unsatisfactory" efficiency rating. On July 6, 1948, a special efficiency-rating committee unanimously agreed that the plaintiff's work performance was below desirable standards and recommended that plaintiff be given an "unsatisfactory" efficiency rating for the period July 1, 1947, to June 30, 1948. Prior to this rating, all of the plaintiff's previous ratings had been "good." On October 4, 1948, plaintiff received notification of proposed action to discharge him on the ground that his efficiency rating was "unsatisfactory." The plaintiff was discharged on November 16, 1948.

Plaintiff appealed the dismissal to the Ninth United States Civil Service Region and the efficiency rating to the Efficiency Rating Board of Review, United States Public Health Service, Federal Security Agency. After a hearing on the dismissal action, the Regional Director of the Civil Service Commission recommended that the plaintiff be demoted to grade CPC–6 in lieu of being separated from the service because of the "unsatisfactory" rating.[1] The agency appealed the Regional Director's decision to the Board of Appeals and Review of the Civil Service Commission in Washington. On March 1, 1949, the Board of Appeals and Review reversed the Ninth Region and withdrew the Regional Director's recommendation that the plaintiff be restored in the reduced grade.

In the meantime, the plaintiff's appeal of the efficiency rating was being processed. On July 26, 1949, the Efficiency Rating Board of Review raised the plaintiff's rating from "unsatisfactory" to "fair" and ordered all records be changed to reflect the adjusted efficiency rating. The Board also ordered the employing agency to redetermine and adjust other administrative actions to conform to the adjusted efficiency rating.[2] The warden

1. Chapter E1–25 (September 23, 1948) of the Federal Personnel Manual provided: " * * * An employee whose official efficiency rating is 'Unsatisfactory' shall not be permitted to remain in his position. He may be separated from the service, or he may be reassigned or demoted to a position for which he is qualified and in which satisfactory performance could be expected. * * * "

2. Chapter E1–34 (November 22, 1948) of the Federal Personnel Manual provided: "Upon receipt of the decision of the board of review increasing the efficiency rating of an employee, the department or agency shall cause the adjusted efficiency rating to be substituted in its official records for the original efficiency rating in each place where the original efficiency rating was recorded, shall reconsider any and all ad-

at the Medical Center was advised by letter of the readjusted efficiency rating. His attention was directed to chapter E1–34 of the Federal Personnel Manual.[3] His attention was also directed, in an accompanying memorandum marked confidential, to the view of the Board of Review that plaintiff should be restored to duty "unless the field station has a justifiable reason for not doing so. This justification should include the quality of his performance from July 1, 1948, to date of separation. It might be well for the station to be prepared to present such justification in the event they do not wish to return this employee to duty."[4] On October 4, 1949, plaintiff was notified that his rating records had been changed to "fair" but that it had been administratively determined, in the public interest, that there were no positions to which the plaintiff could be assigned. There were vacancies in the plaintiff's grade and field but the warden at the Medical Center did not regard the plaintiff as being qualified to fill the vacancies. It was the opinion of the warden that once an unsatisfactory rating had been given an employee, regardless of whether sustained on appeal and review, he should not be reinstated at the same institution because of the effect it would have on the morale of the other employees and upon their attitude toward the management of the institution. Upon notification of the decision of the Efficiency Rating Board of Review, the plaintiff sought reinstatement of his position both by letter and in person. He was not successful. Plaintiff then sought to reopen his case before the Civil Service Commission on the basis of the corrected efficiency rating.[5] The Civil Service Commission refused to reopen the case stating that the Civil Service Commission does not have the author-

ity to require an agency to reinstate an employee who has been removed because of an "unsatisfactory" rating. Plaintiff has at all times held himself ready for employment by the defendant.

Plaintiff brings this action pursuant to Section 14 of the Veterans' Preference Act, 5 U.S.C.A. § 863.

The question presented in this case is whether the warden acted in good faith in refusing to reinstate the plaintiff after the erroneous efficiency rating had been corrected by the Efficiency Rating Board of Review.

The Government contends that it was in the public interest to refuse to reinstate plaintiff; that full consideration was given to the regulation which requires redetermination of administrative action to conform to the adjusted rating; the warden's opinion in this matter should be accorded the greatest respect; the decision of the agency, that it would not be in the public interest to reinstate plaintiff, was an exercise of its discretionary power; and that the decision should not be reviewed by this court since the decision was made in good faith.

 The court does not agree with the contentions of the defendant. In arriving at this conclusion we have not only considered the Commissioner's report, and briefs and argument of counsel, but we have read the testimony in the case and have considered the exhibits. An examination of the above-mentioned material convinces us that the action of the warden was motivated by a desire to disregard the civil service personnel policies which are based upon acts of Congress, and in their place substitute his own program of rules and regulations at the Medical Center. The Commissioner of this court found that the warden was of the opinion that once an unsatisfactory rat-

---

ministrative actions based on the original efficiency rating, and insofar as possible under the law and regulations and in the public interest, redetermine and adjust such administrative actions to conform to the adjusted efficiency rating."

3. See footnote 2.

4. Finding 16.

5. CFR 22.11(e) (1949) provides that the Civil Service Commission may in their discretion reopen an appeal when such action appears warranted by the circumstances. The plaintiff based his appeal to the Civil Service Commission to reopen his case on section 14 of the Veterans' Preference Act, 5 U.S.C.A. § 863.

ing had been given an employee, regardless of whether sustained on appeal and review, he should not be reinstated at the same institution because of the effect it would have on the morale of other employees and upon their attitude toward the management of the institution.[6] This rule of thumb, as used at the Medical Center, certainly violated the plan of Congress. There was a verdict before the trial. If it is the practice to refuse to reinstate an employee discharged because of an unsatisfactory efficiency rating, then it is clear that the personnel rules and regulations in force at the Medical Center are at variance with the general policies of the Civil Service. The regulation under consideration [7] provides that upon the increase of a rating by the Board of Review on Efficiency Ratings, the agency insofar as possible under law and regulations and in the public interest, is required to redetermine and adjust such administrative actions to conform with the adjusted rating. The warden was required to reconsider his action in dismissing the plaintiff because of the unsatisfactory rating. The warden performed the acts required by the regulation in that he stated that a revaluation of the plaintiff's qualifications had been made and it has been administratively determined that the plaintiff was not qualified to be reinstated. But the law required more. A good faith determination of the reinstatement, upon consideration of all the evidence, is required.

A mere statement that the action was taken in the public interest is not sufficient to satisfy the regulation.[8] Here it appears to the court that the warden has determined that once an employee had been rated unsatisfactory, even though that rating was erroneous and later raised, then public interest demanded that he not be reinstated because of some adverse effect that the reinstatement would have on the other employees at the Medical Center. If this is true, then Congress should make an exception to the Government personnel regulations for the benefit of the Medical Center. The exception to the general rules may not be made by the warden.

We cannot see how it would adversely affect employee morale to restore a man, who had been discharged on the basis of an erroneous efficiency rating, to his former job. The record contains no evidence that such result would follow upon his reinstatement, and in the absence of such proof we would suppose that the contrary would be true. In our opinion employee morale would be considerably improved by the knowledge that management was ready and willing to acknowledge and correct its mistakes. Failure to do so would not, as the warden somewhat naively presumed, convince the employees that management was incapable of making mistakes, but rather that it was too apathetic or cowardly to correct them. It appears to the court that the adverse effect, if any, created by rein-

6. Finding 17.
 The warden assumed his duties at the Medical Center on July 6, 1948. This was the first employee efficiency case of this type which the warden processed at the Medical Center. Mr. Crocker was the first employee of the Medical Center, during the present warden's administration, to receive an unsatisfactory rating, appeal to the Efficiency Rating Board of Review, have the rating raised and then reapply for his position. The warden's unfamiliarity with this type of situation may account for the action taken here. It seems rather strange that department officials are sometimes reluctant to follow the simple requirements of the regulations. Perhaps it is pride in a decision already rendered, or a desire not to acknowledge

a mistake. At any rate, they sometimes seem to acknowledge the necessity of a concession grudgingly rather than openly and willingly, to make the barest sort of correction rather than a real compliance. Stringer v. United States, 90 F.Supp. 375, 117 Ct.Cl. 30, 52.

7. Chapter E1–34, Federal Personnel Manual. See footnote 2.

8. The official is presumed to have acted in good faith. The plaintiff has to overcome this presumption. If the plaintiff is successful, then the burden of proceeding shifts to the defendant to show that the action of the official was made in good faith. In this case, the defendant has failed to sustain that burden.

stating the plaintiff would not be on the employees but rather on the warden. The warden wanted to save face. He admitted the reason that he did not reinstate the plaintiff was because he did not want others to know that he had made a rating and had been overruled by higher authority. The warden did not want it known around the Medical Center that the plaintiff had won his appeal and "gotten away with it." [9] This is not the type of redetermination contemplated by regulation. If by the mere statement that the refusal to reinstate an employee was done in the public interest when an open admission is made that it was done to save face satisfies the law and regulations, then the congressional acts and the regulations made by the Civil Service Commission to implement them are meaningless. A statement that an act is done in the public interest, in the face of the evidence shown here, is not sufficient to satisfy the regulation. There must be more—the good faith reconsideration.[10] A circumvention of the law in this manner will not be permitted. Good faith determinations and this type of conduct are indeed strange bedfellows.

Personnel disputes are hard to resolve and we start out with the presumption that the official acted in good faith. We are always loath to find to the contrary, and it takes, and should take, well-nigh irrefragable proof to induce us to do so.[11] In this case, however, we have come to the conclusion that plaintiff's superiors in refusing to reinstate him were motivated, not by a determination that the public interest would be served, but rather by the personal desire of being the final authority on employee efficiency at the Medical Center.

We hold, therefore, that the action taken by the warden in refusing to reinstate the plaintiff was not a redetermination made in good faith of the administrative action taken on the efficiency readjustment of the plaintiff and was not made in the public interest, but rather the action was motivated by personal considerations. This determination of the warden was not made in accordance with the regulation. It was not made in good faith and it is not supported by the evidence. It constituted arbitrary [12] action on the part of the ward-

---

9. On direct examination the warden testified as follows:

"Q. And why would it have been bad for the morale of the service? A. Because we had in effect fired the man and [he] had returned. It meant he had overruled us in this thing, and gotten away with it, when other officers knew of this incapacity."

 * * * * *

"Q. And it is your position, once your institution, you have made a determination the rating is unsatisfactory and an unsatisfactory rating is given, regardless of whether you are sustained in that or not, if there is an appeal taken and the man overrules you, you don't want him back for that reason, is that correct? That is what you said, isn't it? A. That is correct."

This testimony of the warden was not rebutted by the defendant either on cross-examination of the warden or by any other witness.

10. The regulation is clear. It does not require the agency to reinstate the employee who was discharged because of the erroneous efficiency rating, which was later raised by the Efficiency Rating Board of

Review, but it does require the agency to redetermine and adjust such administrative actions to conform with the adjusted efficiency rating. We are not authorized to determine whether a particular veteran should be employed. That is the province of the appropriate agency. Nor are we concerned with whether an employee should be discharged. That is properly in the hands of the affected department. Once a veteran is employed, however, we are concerned with seeing that even a proper discharge is accomplished in the manner provided by law, and that, in discharging him, the agency follows the procedure laid down by the Congress. See Wittner v. United States, 76 F.Supp. 110, 110 Ct.Cl. 231. The same rule applies to reinstatement. The regulations must be followed.

11. Knotts v. United States, 121 F.Supp. 630, 128 Ct.Cl. 489.

12. Arbitrary has been defined as " 'Fixed or done capriciously or at pleasure; without adequate determining principle * * * depending on the will alone * * * capriciously * * *.' " Central of Georgia Ry. Co. v. Mote, 1908, 131 Ga.

en. Where discretion is conferred upon an administrative officer to render a decision, this decision must be honestly rendered, and if it is arbitrary or capricious, or rendered in bad faith, then the courts have the power to review the decision and set it aside. The employee is entitled to an honest judgment of the administrative officer based on the evidence. If that officer does not render an honest judgment, but acts arbitrarily, then undoubtedly the rights of the employee have been violated.[13]

 Defendant further contends that the plaintiff's claim is barred by laches.[14] This contention was raised for the first time in the defendant's brief. The rules of this court require that the defense of laches be pleaded as an affirmative defense.[15] This defense was not contained in the defendant's answer and the defendant has presented no evidence to show that it had in any way been prejudiced by the delay of the plaintiff in filing this suit. Since laches is an affirmative defense, it must be pleaded or it is considered waived if it is not pleaded.[16]

Plaintiff is entitled to recover for the period from the date of discharge to the date of entry of judgment at the rate of pay he was receiving on the date of discharge less any outside earnings. We further find that plaintiff is entitled to any legislative increases and periodic step increases provided for by law or regulation.

Entry of judgment will be suspended to await the filing of a report by the General Accounting Office showing the amount due the plaintiff in accordance with this opinion or the filing of a stipulation by the parties to that effect.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

---

166, 62 S.E. 164, 170. We think that the policy practiced at the Medical Center was arbitrary in the light of the circumstances in this case.

13. Knotts v. United States, supra, footnote 8; Levy v. United States, 118 Ct.Cl. 106; Gadsden v. United States, 78 F. Supp. 126, 111 Ct.Cl. 487.

14. Plaintiff's petition was filed on July 30, 1951. The last administrative action in this case occurred on January 27, 1950, when the Civil Service Commission refused to reopen the plaintiff's case. Eighteen months elapsed from the date of the last administrative action until the filing of the petition. This was 2 years and 8 months after the plaintiff's actual dismissal.

15. Rule 15(b), Rules of the U. S. Court of Claims, 28 U.S.C. (1952).

16. Rule 16(h), Rules of the U. S. Court of Claims, 28 U.S.C. (1952).