Walter SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14874.

United States Court of Appeals
District of Columbia Circuit.

Argued April 13, 1959.

Decided April 23, 1959.

Petition for Rehearing En Banc Denied
July 9, 1959.

Certiorari Denied Oct. 19, 1959.
See 80 S.Ct. 130.

Mr. J. Robert Walsh, Washington, D. C. (appointed by the District Court) for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, DANAHER, and BASTIAN, Circuit Judges.

PER CURIAM.

Appellant was indicted and convicted for violating the marihuana statutes. 26 U.S.C. §§ 4742(a), 4744(a), 68A Stat. 560, 562. An expert witness testified that certain cigarettes which appellant sold "contained marihuana" and that "Cannabis sativa is marihuana." The statute provides that "The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination." 26 U.S.C. § 4761(2), 68A Stat. 566.

■ There was no testimony that the Cannabis sativa in appellant's cigarettes was, or that it was not, derived from the sources which the statute says marihuana "shall not include". This does not affect the validity of the conviction. It is settled that an indictment "founded on a general provision defining the elements of an offense * * * need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." McKelvey v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301.

Affirmed.

On Petition for Rehearing En Banc

Before PRETTYMAN, Chief Judge, and EDGERTON, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN, and BURGER, Circuit Judges, in Chambers.

Filed: July 9, 1959

Order

Upon consideration of appellant's petition for a rehearing en banc, it is

Ordered by the court that the petition for rehearing en banc is denied.

Before EDGERTON, DANAHER, and BASTIAN, Circuit Judges.

Memorandum To Accompany Order Denying Rehearing En Banc

DANAHER, Circuit Judge.

■ The District Judge permissibly read to the jury the statutory definition of marihuana. Maynard v. United States, 1954, 94 U.S.App.D.C. 347, 350, 215 F.2d 336, 339; United States v. Stallsworth, 7 Cir., 1951, 193 F.2d 870, 873, certiorari denied, 1952, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1347; cf. Francis v. United States, 10 Cir., 1956, 239 F.2d 560. Yet counsel here presses upon us Shurman v. United States, 5 Cir., 219 F.2d 282, 292, certiorari denied, 1955, 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253, where the court considered the definition of marihuana in the statute to be "complicated and confusing." The courts in the last three cited cases seem not to have considered the "exemption" feature of the Act. We turn to the legislative history. United States v. Public Utilities Comm., 1953, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020.

H.R. 6906 was reported out of the House Committee on Ways and Means. H.R.Rep.No. 792, 75th Cong., 1st Sess. (1937) to accompany the bill reflects extensive hearings concerning the evils of the marihuana drug traffic. Under the influence of the drug the will is destroyed and all power of direction and controlling thought is lost, the Committee found. Inhibitions are released and many violent crimes have been and are being committed by users of the drug. The Report explains that the regulatory scheme of the bill was predicated upon the order form and registry requirements of the Harrison Act, 26 U.S.C. § 4701

et seq., as sustained in United States v. Doremus, 1919, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493; Nigro v. United States, 1928, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600, and the registration provisions of the National Firearms Act, 26 U.S.C. § 5801 et seq. sustained in Sonzinsky v. United States, 1937, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772.

When H.R. 6906 reached the Senate further hearings were conducted. Hearings on H. R. 6906 Before a Senate Subcommittee of the Committee on Finance, 75th Cong., 1st Sess. (1937). Treasury counsel explained that all transfers of marihuana are to be made in pursuance of official order forms issued by the Secretary of the Treasury, and to prevent transfers to persons who would use marihuana for illicit purposes, a transfer tax is imposed upon each transfer of marihuana.

> "Upon transfers to registered persons, this tax is $1 per ounce, while, upon transfers to non-registered persons who under ordinary circumstances will be the illicit users of marihuana, a heavy tax of $100 per ounce is imposed. Heavy criminal penalties are provided for manufacturing, producing, or dealing in marihuana without registering and paying the special taxes, for transferring marihuana not in pursuance of an order form, and for acquiring marihuana without payment of the transfer tax."

It was developed that many legitimate industrial uses may be made of some portions of the plant. From the mature stalk, fiber yields twine and other fiber products. The seeds yield oil for use in the manufacture of paint, varnish, linoleum and soap. Hempseed cake may be utilized for cattle feed and the seed itself is useful as a special seed for pigeons. The problem was explained in terms of so defining marihuana that illicit production, sale and transfer might be curbed by use of the taxing power while exemptions would be accorded as to industrial uses. Thus counsel further explained that manufacturers of oil and byproducts

will pay an occupational tax but their purchases of seed and sales of such items "will be entirely exempt * * *." Similarly, "Manufacturers of birdseed will also pay an occupational tax, but their purchases of seed will be exempt from the transfer tax and order form provisions of the bill * * *." Again, "producers of hemp will only pay a small occupational tax and make their purchases and sales of seed subject to regulations * * *." It was noted that some suggestion had been made that such producers be eliminated entirely from the bill but "Such an exemption * * * is believed to be impossible."

Treasury counsel further demonstrated that

> "* * * unless the Congress in this bill imposes an occupational tax upon the producers of hemp, Congress cannot make the production of hemp for illicit purposes illegal. Hence, if the occupational tax is not imposed upon producers, marihuana may be legally produced for illicit purposes. * * * Obviously, therefore, the legitimate producers of hemp cannot be further exempted from the provisions of the bill. Otherwise, the bill cannot be enforced."

Clearly, both the House Committee on Ways and Means and the Senate Committee on Finance were fully aware of the evils sought to be reached and of the problem in doing so. S.Rep.No.900, 75th Cong., 1st Sess., to accompany H.R. 6906 informed the Senate, not only as to the reasons for the adoption of the definition of marihuana as contained in the bill but as to the plan for permitting exemption in favor of legitimate industrial users. Against such background, Section 13 was caused to read as follows:

> "It shall not be necessary to negative any exemptions set forth in this Act in any complaint, information, indictment, or other writ or proceeding laid or brought under this Act and the burden of proof of any such exemption shall be upon the defendant. In the absence of the produc-

tion of evidence by the defendant that he has complied with the provisions of section 2 relating to registration or that he has complied with the provisions of section 6 relating to order forms, he shall be presumed not to have complied with such provisions of such sections, as the case may be."

In this form the bill was passed as ch. 553, 50 Stat. 551, approved August 2, 1937. Section 13 of the Act appears at 50 Stat. 556.

Examination of the Act as passed makes perfectly clear the congressional purpose to impose an occupational tax upon certain dealers in marihuana, to impose a transfer tax upon certain dealings in marihuana and to safeguard the revenue therefrom by registry and recording. All persons who seek "exemptions" from the statutory requirements must bear the burden of proving their entitlement to any such exemption. Unless a particular defendant can produce evidence that he has complied with the Act "he shall be presumed not to have complied" with the requirements of the statute.

The public policy which Congress here sought to implement by its condemnation of traffic in marihuana would seem to fit the pattern described by Mr. Justice Frankfurter in Gore v. United States, 1958, 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405, as part of " * * * a unitary congressional purpose to outlaw non-medicinal sales of narcotics. * * * " He continued:

"Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecu-

tion and punishment—tighter and tighter."

Viewed against such background and to meet a recognized need, the Act of August 2, 1937, supra, read as a whole, reflects a clear congressional purpose. Not only need an indictment not negative the permitted exemptions, but the burden is upon any defendant indicted for violation of the Act to bring himself within the exemption he claims.

The codifiers in the 1952 Code caused the definition of marihuana as it appears in 26 U.S.C. § 3238(b) (1952) to apply "When used in this part and subchapter C of chapter 23." Thus reference back to chapter 23, 26 U.S.C. § 2590 et seq. (1952) will disclose the schematic structure hereinbefore described, and in section 2597 thereof, the provision as to exemptions and burden of proof drawn from section 13 of the 1937 Act, supra.[1]

In the 1958 Supplement V, § 4761(2) the definition, "When used in this part" is as we set it forth in our April 23, 1959 opinion. But the codifiers now have related the exemptions section in 26 U.S.C. § 7491 to part II of subchapter A of chapter 39 and to §§ 4753 and 4742 by appropriate interpolation as examination of the following text will disclose.

"It shall not be necessary to negative any exemptions set forth in part II of subchapter A of chapter 39, relating to marihuana, in any complaint, information, indictment, or other writ or proceeding laid or brought with respect to part II of subchapter A of chapter 39 and the burden of proof of any such exemption shall be upon the defendant. In the absence of the production of evidence by the defendant that he has complied with the provisions of section 4753 relating to registration, or that he has complied with the provisions of section 4742 relating to order forms, he shall be presumed not to have complied with such pro-

1. That Congress thought of certain nontaxable situations as giving rise to "ex-

emptions," *and so denominated,* see as illustrative, 26 U.S.C. § 2591(e) (1952).

visions of such section, as the case may be."

That exemption and burden of proof section must govern here.[2]

The court agrees that the petition for rehearing *en banc* must be denied.

We of the sitting division adhere to the holding announced in our opinion of April 23, 1959.

---

2. That the 5th Circuit in Shurman, supra, found the marihuana definition "complicated and confusing," may seem a pardonable understatement.