**William Lyman DEW, Appellant,**

v.

**Najeeb E. HALABY, Administrator, Federal Aviation Agency, et al., Appellees.**

**No. 16741.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 15, 1962.

Decided March 28, 1963.

As Amended May 10, 1963.

Petition for Rehearing Denied May 15, 1963.

CG 376 US 904 (64)
CD 379 US 951 (64)

Mr. David Rein, Washington, D. C., with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., for appellees. Mr. David C. Acheson, U. S. Atty., and Messrs. Nathan J. Paulson, Harold D. Rhynedance, Jr., and Abbott A. Leban, Asst. U. S. Attys., at the time the brief was filed, were on the brief for appellees.

Before WASHINGTON, DANAHER and WRIGHT, Circuit Judges.

Wright, Circuit Judge, dissented.

WASHINGTON, Circuit Judge.

This is a civil service case. Appellant is a discharged Government employee, who seeks a declaratory judgment that his discharge was invalid, and reinstatement to his former position or one of like grade and tenure. He has appealed from a final order of the District Court denying relief.

The background of the case is this. Appellant served in the United States Air Force in 1951–55 and thus became entitled to the benefits of the Veterans' Preference Act of 1944, 58 Stat. 387, as amended, 5 U.S.C. § 851 et seq. (1958). He obtained employment thereafter in the Central Intelligence Agency as a file clerk handling coded data. In order to obtain the "secret" security clearance needed, he was required to take a lie detector test. Appellant admitted committing at least four unnatural sex acts with males, some of them for pay, in 1950, when he was 18 or 19 years of age. He also admitted smoking marijuana cigarettes on at least five occasions in 1951 and 1952 during his service in the Air Force. The officials of the Central Intelligence Agency thereupon offered to allow appellant to resign his post, and he did so.

He then applied to the Civil Aeronautics Authority for employment, and on September 17, 1956, was given an appointment as an Airways Operations Specialist, subject to a probationary period of one year,[1] and "subject to investigation."[2] Appellant thereafter served for some twenty months as an air traffic controller in Denver, Colorado, receiving one promotion and on July 3, 1957, receiving a performance rating of satisfactory. On May 14, 1958, the agency, having just come into possession of the information above mentioned, notified him that his removal was proposed. Detailed charges were filed, based on the incidents which appellant had admitted to the C.I.A. In his answer, appellant in substance repeated his earlier admissions, but asked time to file a "psychiatric evaluation." This was denied, and appellant's discharge was ordered. Appellant then appealed to the Civil Service Commission, which after extended proceedings affirmed the agency's decision.

Appellant thereupon brought suit in the United States District Court for the District of Columbia for reinstatement and other relief. This was ultimately granted, "on the ground that the plaintiff was not given sufficient time within which to file supporting affidavits * * *." Dew v. Quesada, Civil Action No. 275–59, D.D.C., Order of September 29, 1959. No appeal was taken, and appellant was reinstated.

Some weeks thereafter, on December 15, 1959, the agency again filed charges, based on the same incidents as before. Appellant repeated his admissions as to the incidents, and was allowed to file a "psychiatric evaluation." The psychiatrist concluded that appellant was functioning normally, and that he did not believe him to have a "homosexual personality disorder."[3] The agency notified appellant, on February 16, 1960, that it had reviewed the materials submitted, and that the charges were sustained.

---

1. See 5 U.S.C. § 633(2), Fourth (1958); 5 C.F.R. § 2.301(a) (3).

2. See 5 C.F.R. § 2.107 (Rev.1961).

3. "In short, it is my impression that Mr. Dew mentally and emotionally is functioning at this time entirely within the normal range, and I do not doubt that he has been doing so for at least a period of several years. He appears to be happily married and has assumed the responsibilities of parenthood without evidence of regression or emotional instability. He seems to be adjusting in his job. And I do not know what more one could ask.

"Furthermore, I decidedly do not believe him to have a homosexual personality disorder. I believe that the several incidents which he gave a history of having engaged in while age 18 and a freshman in college were isolated incidents primarily the result of his curiosity. I do not believe they have been repeated. Furthermore, at that age I do not feel that isolated episodes of homosexual behavior can be considered abnormal or perverted, but rather a process of normal sexual investigation and curiosity. There is considerable evidence in the psychiatric literature that this allegation is true."

Appellant then filed an appeal with the Civil Service Commission. After a hearing at which the appellant's psychiatric witness testified, the Appeals Examiner affirmed the dismissal. The Board of Appeals and Review of the Commission also affirmed.

Appellant then brought the present suit in the District Court on December 15, 1960. On cross-motions for summary judgment, the court ruled that the Government was entitled to summary judgment. This appeal followed.[4]

## I.

One of appellant's contentions has to be considered at the outset. The decision of the District Court in Dew v. Quesada, cited above, is alleged by appellant to be dispositive of the present appeal. This contention is clearly without merit, since the court there decided only that the first proceedings against appellant were defective because he was not given sufficient time to file supporting affidavits. This defect (assuming for present purposes that the court was correct in its holding) was carefully avoided in the later proceedings. Appellant's argument, that the District Court in Dew v. Quesada must have decided that appellant could not be discharged because of his past conduct, without giving consideration to his current fitness, is untenable on the record.

## II.

Appellant further contends that since he had served the probationary period of one year, he acquired some special protection against being discharged by his agency for reasons arising from his pre-employment conduct. He argues that his removal "was inconsistent with Section 2.301(a) (3) of the Civil Service Regulations which limits the probationary period of an eligible to one year, and to Section 2.108(b) [2.107(b)] which provides that the appointment condition 'subject to investigation' expires after one year except in false statement or deception cases." But, as is clear from Section 2.107(c) and (e) of the Regulations,[5] 5 C.F.R. § 2.107(c) and (e) (Rev. 1961), the one-year probationary and investigation period is designed to permit the Civil Service Commission during that period to instruct an agency to discharge an employee for cause known to the Commission. It is not intended to prevent an agency, after the one-year period, from discharging an employee, and in fact Section 9.101 of the Regulations—as it stood when charges were filed against appellant—provided that the employing agency, as distinguished from the Commission, "shall" remove an employee after such period for "such cause as will promote the efficiency of the service."[6] The phrase last quoted is

---

4. Appellee Halaby is Administrator of the Federal Aviation Agency, successor to the Civil Aeronautics Administration. See Federal Aviation Act of 1958, § 1502(a), 72 Stat. 810, 49 U.S.C. § 1341, note. The other appellees are the members of the Civil Service Commission.

5. These read:
   "(c) For a period of one year after the effective date of an appointment subject to investigation under paragraph (a) of this section, the Commission may instruct the agency to remove the employee if investigation discloses that he is disqualified for any of the reasons listed in § 2.106. Thereafter, the Commission may require removal only on the basis of intentional false statements or deception or fraud in examination or appointment.
   \*　　\*　　\*　　\*　　\*

"(e) Parts 9 and 22 of this chapter shall not apply when an agency removes an employee under instructions of the Commission."
Part 9 of the Regulations deals with "Separations, Suspensions, and Demotions" of employees from the service by action of the agency, rather than the Commission, and Part 22 deals with "Appeals of Preference Eligibles under the Veterans' Preference Act of 1944."

6. See 5 C.F.R. §§ 9.101, 9.102(a) (1), and 22.201 (Rev. 1961). These sections are no longer in effect. Sections 9.101 and 9.-102(a) (1) were eliminated as such, but their substance was continued in revisions made in 1961. See 26 FED.REG. 181 (Jan. 11, 1961), 5 C.F.R. §§ 9.101, 9.102, and 9.201 (Supp. 1962). Effective July 1, 1962, Parts 9 and 22 of the Regula-

also to be found in the Veterans' Preference Act, 5 U.S.C. § 863.[7] The expiration of the probationary and investigatory period accordingly has no significance in cases like the present, where the question is whether the discharge is for "such cause as will promote the efficiency of the service," within the meaning of the Preference Act and the Regulations.

### III.

The crucial question in this case is thus whether it is arbitrary and capricious, as appellant argues, to base removal for "such cause as will promote the efficiency of the service" on pre-employment conduct of the employee, under circumstances like those here presented.

█ It is at once clear that removal for certain types of pre-employment conduct was authorized by the Regulations of the Civil Service Commission in force at the time charges were filed against appellant, and at all other times relevant to the case. Section 9.101 thereof, cited in footnote 6 above, provided in pertinent part:

"§ 9.101 Agency responsibility for separation or demotion of employees.

"(a) The employing agency shall remove, demote, or reassign to another position any employee in the competitive service whose *conduct*

or capacity is such that his removal, demotion, or reassignment *will promote the efficiency of the service. The grounds for disqualification of an applicant for examination stated in § 2.106(a) (2) through (8) of this chapter shall be included among those constituting sufficient cause for removal of an employee.*" (Emphasis supplied.)

Section 2.106, 5 C.F.R. § 2.106 (Rev. 1961), provided in pertinent part:

"§ 2.106 Disqualifications of applicants.

"(a) *Grounds for disqualification.* An applicant may be denied examination and an eligible may be denied appointment for any of the following reasons:

\*   \*   \*   \*   \*   \*

"(2) Physical or mental unfitness for the position for which applied;

"(3) *Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct;*

"(4) Intentional false statements or deception or fraud in examination or appointment;

"(5) Refusal to furnish testimony as required by § 05.3 of this chapter;

"(6) Habitual use of intoxicating beverages to excess;

---

tions were revoked in their entirety and a new Part 22 was added. See 27 FED. REG. 4759, 5 C.F.R. §§ 22.103, 22.104, 22.201 (Supp. 1963). Section 22.104 now reads:

"§ 22.104 General standards.

"(a) Adverse action may not be taken against an employee covered by this part except for such cause as will promote the efficiency of the service.

"(b) Adverse action may not be taken against an employee covered by this part for political reasons, except as required by law.

"(c) Adverse action against an employee covered by this part may not be based on discrimination because of marital status, physical handicap, race, creed, color, or national origin."

7. This section provides in pertinent part:

"§ 863. Discharge, suspension, etc., only for cause; reason in writing; advance notice; personal appearance; findings and recommendations

"No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, hereinbefore referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing \*   \*   \*."

5 C.F.R. §§ 22.102 and 22.201, relating to appeals of those who have veterans preference status, incorporate the substance of this provision.

586

"(7) Reasonable doubt as to the loyalty of the person involved to the Government of the United States; or

"(8) Any legal or other disqualification which makes the applicant unfit for the service." (Emphasis added.)

The ground of disqualification underscored above—"(3) Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct"—which Section 9.101 in its then form expressly made a ground for removal by the agency, and on which the Government here relies, cannot logically be read to refer solely to conduct occurring after Government employment has commenced, though it certainly included such conduct. It must have included pre-employment conduct, because it went to the *ab initio* disqualification of the employee for original appointment, and refers to acts which in many cases could only have occurred prior to Government employment: (e.g., Section 2.106(a) (4), deception or fraud in examination or appointment). Thus, it is plain that under the Regulations pre-employment conduct of a criminal or immoral nature was a sufficient cause for removal of any employee. Appellant does not argue that his pre-employment conduct was not of the sort condemned by the underscored part of Section 2.106 of the Regulations: in fact, it is difficult to see how he could ask a court to hold that the agency erred in so considering it.[8]

■ Appellant does contend, however, that Section 9.101 of the Regulations, and hence Section 2.106 as well, had no application to veterans preference eligibles. But Section 9.101 in terms applied to "any employee in the competitive service," which included this appellant, and Section 9.102(a) (1) provided that "No employee, veteran or nonveteran, shall be separated, * * * except for such cause as will promote the efficiency of the service and for reasons given in writing." Of course, Section 22.201, which provided that adverse action may not be taken against a preference eligible employee "except for such cause as will promote the efficiency of the service," was also applicable. See the Commission's note following Section 9.102, in 5 C.F.R. at p. 70 (Rev. 1961). We find nothing to indicate that veterans with preference rights were excluded from the standards provided in Section 9.101, and we must reject appellant's contention that those standards did not apply to him.

■ Appellant's fundamental contention is that it was arbitrary and capricious to remove him for his past conduct, under the circumstances here. We do not think so. Common sense tells us that in many situations the Government must have authority to separate employees because of misconduct occurring prior to their Government employment,[9] and we have heretofore sustained removals under circumstances quite similar to those of the present case. See Shields v. Sharp, No. 15,666, decided by Order of November 1, 1960 (unreported), cert. denied, 366 U.S. 917, 81 S.Ct. 1093, 6 L. Ed.2d 240 (1961); Caplan v. Connally, 112 U.S.App.D.C. 42, 299 F.2d 126 (1962), cert. denied, Caplan v. Korth, (May 13, 1963) 83 S.Ct. 1304. In the

8. As to his homosexual acts, some of which occurred in North Carolina, see N.C.Gen. Stats. § 14–177 (1943); as to his possession of marijuana, see 26 U.S.C. §§ 4742(a), 4744(a) (1958); Smith v. United States, 106 U.S.App.D.C. 26, 269 F.2d 217, cert. denied, 361 U.S. 865, 80 S.Ct. 130, 4 L.Ed.2d 108 (1959); Associates Investment Co. v. United States, 220 F.2d 885 (5th Cir. 1955). We do not know, of course, what defenses appellant might have raised had he been indicted for any of these offenses, or whether he would

have been convicted. But his admissions remove any factual questions from the case.

9. If it is shown, for example, that an employee of the Treasury Department, engaged in the handling of Government funds, was an embezzler in his previous employment by a commercial bank, few would say that his removal from his Treasury post on that ground would be unjustified, or that it would not "promote the efficiency of the service."

Shields case, the charges of having committed abnormal sexual acts related only to the pre-employment period; the charge for the post-employment period was that of association with known homosexuals. In the Caplan case the charges included several admitted homosexual acts prior to employment and only one such act after employment (and that allegedly under duress).

The Board of Appeals and Review of the Civil Service Commission, acting for the Commission, in affirming appellant's removal, said:

> "* * * the Board concurs in the findings that it is in the public interest and does promote the efficiency of the service to establish and apply both qualification and suitability standards to applicants and to remove appointees or employees who have committed such acts and who would not have been selected for appointment had the facts been known prior to appointment."

Whether such a conclusion would be universally valid is not something we need pass upon here. But it seems to us to be rational and valid in the present case.[10]

The Government, far from having admitted before us that there is no connection between the pre-employment acts in suit and Dew's conduct as a civil service worker, points out on brief that such acts "may have, and can be determined to have, an adverse impact upon the efficiency of the service." It quotes the regulation which was here applied, 5 C.F.R. § 9.101(a) (Rev.1961), and adds: "It cannot be said, we submit, that the regulation in question has no rational basis founded in experience." We agree.

In considering whether the removal was arbitrary and capricious we cannot ignore the nature of appellant's duties. He was acting as an airport traffic controller. His duties were to regulate the flow of air traffic, issue clearances for the take-off and landing of planes, and maintain the proper separation of planes on the ground and in the air. His job thus gave him control over safeguarding the lives of passengers, crews, and persons on the ground. That such a position requires skill, alertness, and above all responsibility requires no demonstration.[11] The governing regulation, 5 C.

---

10. The Appeals Examiner, at an earlier stage, had made this finding:

"While it is possible that Mr. Dew's admitted homosexual acts might have no relation to his competence and ability to perform the duties of his position it does not follow that employment of a person with such a background would not adversely affect the efficiency of the Federal service. Despite the Kinsey report which was offered in evidence by Counsel for the appellant to show the incidence of homosexual behavior in America such conduct still violates existing laws and morals of our society. To require employees to work with persons who have committed acts that are repugnant to the established and accepted standards of decency and morality can only have a disrupting effect upon the morals and efficiency of any organization. Therefore, the fact that Mr. Dew had engaged in homosexual acts and smoked marijuana cigarettes prior to his employment does have a bearing upon and relate to the efficiency of the Federal service, and is not an arbitrary or ca-

pricious reason for removing a Federal employee."

11. The exacting nature of the duties and responsibilities of control tower operators is reflected in the decisions dealing with the liability of the Government for the consequences of their negligence. See, e. g., Aero Enterprises, Inc. v. American Flyers, Inc., 167 F.Supp. 239 (N.D.Tex. 1958), rev'd on other grounds sub nom. United States v. Schultetus, 277 F.2d 322, 86 A.L.R.2d 375 (1960); Union Trust Company of District of Columbia v. United States, D.C., 113 F.Supp. 80 (1953), aff'd in part sub nom. Eastern Air Lines, Inc. v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, aff'd, United States v. Union Trust Co., 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796 (1955). In the latter case, District Judge McGuire said, at page 84 of 113 F.Supp.:

"When the Government, as here, takes upon itself the function—as it claims it must—of the regulation of air commerce and the responsibility, among other things, of regulating the flow of traffic at a pub-

F.R. § 9.101(a) (Rev.1961), authorizes the agency to remove an employee when his "conduct or capacity" is such that his removal will promote the efficiency of the service. We lack the background and experience to say, contrary to the agency's judgment, that efficiency will not be promoted by removing one from such a post as was held by appellant, when his questioned "conduct or capacity" in the past did not demonstrate qualities of character, stability, and responsibility. From the beginning the United States Civil Service has been based on standards of character as well as fitness. See Act of March 3, 1871, § 9, 16 Stat. 514, 5 U.S.C. § 631 (1958).

Important, too, in assessing whether the Government's action was arbitrary or capricious, is the background of the individual case. We do not now have before us an attempt to undermine an established civil servant by a malicious investigation of his past. The present case is the unfortunate one of a new employee with something to hide. He was appointed by the Civil Aeronautics Authority, served his probationary period, and was then found to have been dropped from another Government agency, because of his past record.[12] The probationary period had passed, but the Government nevertheless proceeded, no doubt because the then regulation expressly allowed—indeed directed—it to proceed, to seek his removal.

The findings made here are not subject to valid attack for insufficiency. The Agency could not discharge appellant under Section 14 of the Veterans' Preference Act, 5 U.S.C. § 863, "except for such cause as will promote the efficiency of the service and for reasons given in writing, * * * specifically and in detail * * *." The provision of the Lloyd-LaFollette Act is similar. Here a detailed charge was made in writing against appellant, and was admitted by him. The Agency's letter removing him stated that "the Charge is sustained. * * * these matters [set forth in the charge] constitute such cause that your removal will promote the efficiency of the service within the meaning of Section 14 of the Veterans Preference Act. * * *" No further statement of the reasons for the discharge was required. See Green v. Baughman, 100 U.S.App. D.C. 187, 189, 243 F.2d 610, 612, cert. denied, 355 U.S. 819, 78 S.Ct. 25, 2 L.Ed. 2d 35 (1957), where we said:

"The second point is that the decision in the letter of notification stated no reasons, simply saying 'that the charges are sustained'. The statute provides that no preference eligible shall be discharged except for reasons given in writing. The charges were stated in writing and with sufficient specificity. They were sustained, and Green was so notified in writing. We think direct reference to the charges as sustained was a sufficient statement of the reasons for the discharge."

A similar holding was made in Harshaw v. Hollister, 105 U.S.App.D.C. 144, 145, 265 F.2d 128, 129 (1959).[13]

---

lic airport, the assumption of such a responsibility involves something further, namely, not only an activity designed to be protective of the interest of that amorphous group known as the public as a whole, but that of individuals as well, against potential hazards incident to such performance and implicit in its undertaking. And if injury or death results as a consequence of the negligence of its servants or agents so engaged, Congress has decreed that the mantle of sovereignty which heretofore has protected it, falls from its shoulders and thus what was formerly at best an unenforceable moral obligation is thus transmuted into an actionable legal right."

12. The appellant had answered "no" to a question on his application form to the aviation agency, inquiring whether he had ever been forced to resign from employment. A charge of misrepresentation as to this point was originally made by the Government in the removal proceedings, but appellant's answer to the charge was found satisfactory. His removal was not based on this charge.

13. Mulligan v. Andrews, 93 U.S.App.D.C. 375, 211 F.2d 28 (1954), and Coleman v.

Primary responsibility for the maintenance of the civil service system rests on the Civil Service Commission. Here the Commission promulgated regulations which expressly warned appellant and others that reasons which would bar original appointment would likewise be a cause for discharge. The Commission applied these regulations to appellant. It is before this court defending those regulations and its actions in sustaining appellant's discharge. We find the regulations valid. There is no ground on which appellant can escape their application. It is enough for us to find that in the present case appellant received every procedural safeguard called for by the statutes and the rules, cf. Williams v. Zuckert, 111 U.S.App.D.C. 294, 296 F.2d 416 (1961), S.C., 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486 (Jan. 14, 1963), 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed. 136 (April 22, 1963), and that the final action taken does not appear to us to be arbitrary or capricious.

We do not regard this decision as being disruptive of the civil service system, or even as having any broad or far-reaching effects. We simply hold that the regulations in force at the time of appellant's discharge were properly applied. Other regulations now prevail, which do not expressly make an original

disqualification for office a cause for discharge.[14] How the new regulation will be interpreted and applied remains to be seen: at any rate, this opinion deals only with the former regulation.

The judiciary has a very limited scope of review where removal of a civil servant is challenged on its merits, rather than on procedural grounds.[15] We certainly are in no position to say that retention of the appellant, demonstrated to have evidenced a lack of good character in the past, would promote, or would not have a derogatory effect on, the efficiency of the service. The choice of personnel to direct the Nation's air traffic is for the Federal Aviation Agency, and not the courts. For these reasons, the order of the District Court will be

Affirmed.

WRIGHT, Circuit Judge (dissenting).

Using some unfortunate adolescent acts as its springboard, the court drives a gaping hole in the wall of protection which has surrounded civil service workers for almost a hundred years.[1] For the first time in the fifty years of the Lloyd-LaFollette Civil Service Act[2] which first limited the power of discharge,[3] a court has held that a permanent civil service worker, including one with veteran's preference,[4] can be fired

Brucker, 103 U.S.App.D.C. 283, 257 F.2d 661 (1958), are not to the contrary. In the Mulligan case, the letter of discharge made only a reference to "the facts developed during the investigation" and a statement that "the evidence is such as to show your unsuitability for continuance * * *." There was no finding that the charges had been sustained. In the Coleman case, the regulations there involved required the agency, in its letter notifying the employee of his discharge, to advise him of the findings made. It failed to do so.

14. See fn. 6, supra.

15. See, for example, Keim v. United States, 177 U.S. 290, 296, 20 S.Ct. 574, 44 L.Ed. 774 (1900); De Fino v. McNamara, 109 U.S.App.D.C. 300, 287 F.2d 339 (1961); Hargett v. Summerfield, 100 U.S.App.D.C. 85, 243 F.2d 29 (1957); Carter v. For-

restal, 85 U.S.App.D.C. 53, 54, 175 F.2d 364, 365, cert. denied, 338 U.S. 832, 70 S.Ct. 47, 94 L.Ed. 507 (1949); Levine v. Farley, 70 App.D.C. 381, 107 F.2d 186 (1939), cert. denied, 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1940).

1. For a history of the Civil Service Acts, see Van Riper, History of United States Civil Service (1958).

2. 37 Stat. 555, 5 U.S.C. § 652.

3. President Taft had by executive order limited the power of discharge to "cause as will promote the efficiency of the service" in 1911. The Lloyd-LaFollette Act was the first Congressional limitation.

4. Veterans' Preference Act of 1944, 58 Stat. 387, 390, 5 U.S.C. § 863. There is no difference in the grounds upon which veterans and non-veterans may be discharged. Veterans, however, have greater procedural protections.

# 590

for pre-employment acts unrelated to his Government service.[5] More than this, going beyond the facts of this case, the court holds that permanent civil service workers, including those with veterans' status, may be fired for any reason which would disqualify an *applicant* [6] for civil service in spite of the fact that the reason may have arisen long prior to employment and be totally unconnected with the civil service worker's conduct as such.[7]

If this ruling remains the law, no civil service job is safe. Any civil service worker who becomes *persona non grata* with the powers that be may have some historical research made on his pre-employment background in an effort to turn up something "disqualifying." Even the innermost secrets [8] of the civil service worker, long buried and known only to himself, may be the subject of inquiry.

For example, as here, a lie detector test [9] may be administered to the worker during which he may be asked all manner of questions, the scope of which may be directly proportional to the intensity of the desire of the Government agency to get the worker's job. The mere threat of this kind of inquiry would be sufficient in most cases to cause the resignation of the worker marked for dismissal.

Of course, it will be suggested that no Government agency would indulge in this sort of thing, that it just cannot happen here. But it has happened here. And I venture to suggest that "the efficiency of the service" would be enhanced much more by an assurance to civil service workers that no court will place its imprimatur on such pre-employment background investigations of permanent civil service workers, than by the elimination of this one man.[10]

5. The purpose of footnote 12 of the court's opinion is not clear. *There is no suggestion in the record that Dew was discharged for misrepresentations in obtaining employment or for any reason other than the pre-employment acts in suit.*

6. For this holding the majority first relies on 5 C.F.R. § 9.101 (Rev.1961) and then derives much comfort from its repeal. But the superseding regulation is simply a repetition of the language of the statute, which language the court finds supportive *of its interpretation of the regulation here relied upon.*

7. The Civil Service Commission's own regulations, which govern the powers of the agencies to discharge, strongly indicate that an agency is not to discharge permanent employees simply for pre-hire misconduct which is not tied to current civil service performance. 5 C.F.R. § 2.301(c) (2), formerly 5 C.F.R. § 9.103 (b), 22 F.R. 10029, provides a special procedure for discharge of *probationary* employees for pre-hire misconduct. This constitutes specific recognition of the problem, and the elaborate safeguards provided indicate that it is not favored. There is no provision *at all* for discharge of *permanent* employees simply for pre-hire misconduct. The omission seems significant.

8. Dr. Kinsey's report, which was received in evidence by the Civil Service Appeals Examiner, indicates that 40 per cent of

American males have homosexual experiences prior to age 20. Kinsey, Sexual Behavior in the Human Male, p. 625, fig. 156 (1948). It also indicates that approximately 50 per cent of married males have extra-marital intercourse. Id. at p. 585.

9. See, e. g., Robert L. Scott v. The United States, Ct.Cl., No. 372–60, decided January 11, 1963, 31 L.W. 2351.

10. "Unless limited by constitution or statute, 'the power of appointment to public office carries with it the right of removal.'" Levy v. Woods, 84 U.S.App. D.C. 138, 139, 171 F.2d 145, 146 (1948); Levine v. Farley, 70 App.D.C. 381, 385, 107 F.2d 186, 190 (1939). Congress has, however, limited the power of removal to those discharges which will "promote the efficiency of the service." 5 U.S.C. §§ 652, 863. Judicial review is available to determine if discharges subject to this limitation are arbitrary and capricious. See Williams v. Cravens, 93 U.S.App.D.C. 380, 382, 210 F.2d 874, 876 (1954), cert. denied, sub nom. Williams v. Robbins, 348 U.S. 819, 75 S.Ct. 30, 99 L.Ed. 646 (1954); Norden v. Royall, D.D.C., 90 F. Supp. 834 (1949); Crocker v. United States, 130 Ct.Cl. 567, 127 F.Supp. 568 (1955). Compare Carter v. Forrestal, 85 U.S.App.D.C. 53, 175 F.2d 364 (1949). Until today no court has ever approved the discharge of a permanent civil service employee for pre-employment acts alone.

Here the Government admits that there is no connection between the pre-employment acts in suit and Dew's conduct as a civil service worker.[11] Nor are there any administrative findings indicating a connection.[12] The court makes an effort to fill the vacuum by suggesting that Dew's pre-employment acts may affect his work as an airport control tower operator. Dew's employer, the Federal Aviation Agency, whose duty it is to operate airports, made no such finding. Nor did the Board of Appeals and Review, acting for the Civil Service Commission, or the Appeals Examiner. This court's rationalization on the subject can hardly serve in the absence of findings. Under the law, the court's responsibility is to review administrative findings, not to make them. An administrative order "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." Securities and Exchange Comm. v. Chenery Corp., 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

The reason why there were no such findings below is that there is no evidence to support them. There is no suggestion here that Dew is a homosexual [13] or a dope addict. The Government admits this. And the uncontradicted psychiatric testimony, as shown by the court's opinion, confirms that Dew is normal in all respects. Thus the net effect of Dew's dismissal, in addition to undermining the integrity of the civil service system, is wrongfully to deprive an Air Force veteran with permanent civil service status of his job which he badly needs to support his wife and two children.

11. The court cites the *brief* on *appeal* written by the United States Attorney's office to show that the *administrative agency* and the *Civil Service Commission* actually discharged Dew for present incompetence to perform his control tower duties. The record does not support the brief. In fact, the record is affirmatively to the contrary.

As for the first abortive attempt to remove Dew, the agency's position was stated very succinctly by Mr. Riley, deputy personnel director for the agency:

"* * * In summary, the entire situation to us comes down to this one basic point that his appointment was made subject to investigation. The investigation, which did take quite a bit of time, disclosed certain information which, if we had known that information at the time we were considering him for appointment, we would not have employed him. Our whole case as an agency comes back to that basic issue. * * *"

That attempt at removal was reversed because the agency refused to receive evidence bearing on Dew's present competency.

At the second hearing, where the evidence concerning present competency was received over repeated agency objection that it was irrelevant, the following colloquy occurred between Mr. Sullivan, personnel relations officer and sole witness for the agency, and Mr. Deikman, attorney for Dew:

"Mr. Sullivan: I read from the record, in my inquiry as to the responsible people his services were satisfactory.

Mr. Deikman: You would say that you had no evidence whatsoever that he was an incompetent employee?

Mr. Sullivan: *None whatsoever*." (Emphasis supplied.)

12. The finding of the Appeals Examiner noted in the court's opinion, footnote 10, was neither referred to nor adopted by the Civil Service Commission which limited itself to the narrow holding quoted in the court's text, page 9. But if it should be considered, I would note that there is no evidence that fellow employees knew of Dew's past acts. Nor is there evidence that they in fact found his presence obnoxious. Cf. Crocker v. United States, supra, Note 10.

13. Appellee's memorandum in support of motion for summary judgment filed in the court below states:

"In the administrative proceedings, plaintiff acting through counsel made reference to the first removal proceedings and again sought to show that plaintiff is not now a homosexual and would not be likely to repeat the type of acts concerned. Such matters, however, were entirely irrelevant to the matter under inquiry as the letter of charges specifically concerned 'disgraceful personal conduct' by plaintiff, not whether or not plaintiff is now, or likely to be in the future, a homosexual. * * *"